SCOTT J. HYMAN (State Bar No. 148709)
sjh@severson.com
RYAN M. ITO (State Bar No. 251306)
rmi@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendant
FORD MOTOR CREDIT COMPANY LLC (erroneously sued as Ford Motor and Credit Company)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA MUHAMMAD, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>REESE LAW GROUP, APC; and FORD MOTOR AND CREDIT COMPANY, and DOES 1-10,<br><br>　　　　Defendants. | Case No. 3:16-cv-02513-MMA-BGS<br>Hon. Michael M. Anello<br>Ctrm. 3A (Schwartz)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss Complaint and Request for Judicial Notice in Support of Motion to Dismiss Complaint]*<br><br>Date:　　　February 6, 2017<br>Time:　　　2:30 p.m.<br>Crtrm.:　　　3A<br><br>Action Filed: October 7, 2016<br>Trial Date:　None Set |

# I. INTRODUCTION

Plaintiff, Sabrina Muhammad, pleads two Causes of Action against Ford Motor Credit Company: the First under the federal Fair Debt Collection Practices Act ("FDCPA") and the Second under California's Rosenthal Fair Debt Collection Practices Act. Both fail to state a claim upon which relief can be granted, albeit for different reasons.

Plaintiff's First Cause of Action under the federal FDCPA fails because Ford Credit's actions, if any, involved its own debt, not the debt "of another" as defined under the FDCPA. 15 U.S.C. § 1692a(6). Plaintiff alleges that she "formally owe[d] a debt to FORD MOTOR CREDIT COMPANY" pursuant to a "contract entered into between Plaintiff and Defendant FORD MOTOR CREDIT COMPANY. . ." Complaint, ¶¶ 19 and 39 respectively; *see generally* Complaint, ¶¶ 48 – 56. Thus, Plaintiff's Complaint concedes that Ford Credit's alleged activity as an automobile finance company involved its activity as a first-party "creditor", not as a third-party debt collector collecting the debt "of another" under the FDCPA. 15 U.S.C. § 1692a(6). *E.g. Parker v. Capital One Auto Finance, et. al*. 2015 WL 7864182, at *2 (S.D.Ind. 2015) ;[1] *Gorman v. JP Morgan Chase Bank*, 2013 WL 1882303 (S.D.Cal. 2013).[2] Thus, Plaintiff fails to state a cause of action under the FDCPA and the First Cause of Action should be dismissed.

---

[1] "The FDCPA . . ."applies only to 'debt collectors' seeking satisfaction of 'debts' from 'consumers'; it does not apply to 'creditors.' " McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 500 (7th Cir. 2008);[T]hese two categories—debt collectors and creditors—are mutually exclusive." Id. at 501 (*citing Schlosser v. Fairbanks Capital Corp*., 323 F.3d 534, 536 (7th Cir. 2003)). Ms. Parker has confirmed that her position is that Capital One and Onyx are "creditors." Given that the FDCPA applies to debt collectors but not creditors, Ms. Parker's FDCPA claim against Capital One and Onyx fails as a matter of law.".

[2] "Defendant JP Morgan argues that the FDCPA does not apply to it because it is not a debt collector, but rather a creditor. In opposition, Plaintiff asserts it is unclear (footnote continued)

1    Plaintiff's Second Cause of Action under California's Rosenthal Fair Debt
2    Collection Practices Act fares no better, but for two different reasons.
3    First, although the Rosenthal Act can apply to creditors, the type of
4    transactions that the Rosenthal Act reaches is narrower than the FDCPA.  The
5    Rosenthal Act reaches only "consumer credit transactions", which Plaintiff's
6    consumer vehicle lease[3] was not.  *Compare* Cal. Civ. Code § 1788.2(e) ("The term
7    "consumer credit transaction" means a transaction between a natural person and
8    another person in which property, services or money is *acquired on credit* by that
9    natural person from such other person primarily for personal, family, or household
10   purposes) (emphasis added) *with LaChapelle v. Toyota Motor Credit Company*, 102
11   Cal.App.4th 977, 987 (2002) ("[vehicle] lease agreement therefore does not meet the
12   definition of a consumer credit contract"); *Bescos v. Bank of America, NT & SA*, 105
13   Cal.App.4th 378, 393 (2003) ("the [vehicle] lease agreement does not qualify as a
14   "consumer credit contract.").
15   Second, even if the Rosenthal Act does reach Plaintiff's consumer vehicle
16   lease as a "consumer credit transaction", nothing in the Rosenthal Act alters
17   California's traditional rule that a client is not responsible for its attorney's litigation

---

what role JP Morgan played in the transaction. However, Plaintiff alleges that his car loan was "financed through JP Morgan." [FAC at 7.] Thus, the very allegations of the FAC indicate that JP Morgan was a creditor, rendering inapplicable the provisions of the FDCPA. Furthermore, upon review of the FAC, the Court finds that it is devoid of any proper allegations setting forth that JP Morgan is a "debt collector."

[3] First, Plaintiff cites to the judgment obtained by Ford Credit against Plaintiff "on or about March 30, 2001…(in) Orange County Superior Court Case No. 00HL02768" as well as the "formerly owe(d)…debt to Ford Motor Credit Company."  Complaint ¶¶ 19, 20, 22, Request for Judicial Notice ("RJN"), Ex. A. The "debt" that Plaintiff refers to, and that judgment was obtained on, is a motor vehicle lease, executed between Plaintiff and Theodore Robins Ford dealership. RJN, Ex. A.

misconduct. *E.g. Lynn v. Superior Court*, 180 Cal.App.3d 346, 349 (1986) ("in his role as trial counsel [an attorney] is an independent contractor"). Rather, California's Rosenthal Act alters that "independent contractor" rule only when the client's attorney engages in "non-legal" collection misconduct. *E.g. Oei v. N. Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1096 n. 28 (C.D.Cal. 2006) ("(A)s respects plaintiffs' Rosenthal Act claim, a California claim to which *Lynn* applies, the decision…insulates (the client)…from vicarious liability for (the)…filing and prosecution of the state court collection action. It does not protect (the client)…from liability for such "nonlegal" conduct as making repeated harassing telephone calls"). Here, Plaintiff alleges no such "nonlegal" misconduct by Ford Credit's lawyers on which vicarious liability can hinge. Rather, Ford Credit's counsel, Reese Law Group, acted as trial counsel to Ford Credit in its role obtaining a judgment against Plaintiff and levying on that judgment. Complaint, ¶¶ 21 – 47. Thus, California's Rosenthal Act does not impute Reese Law Group's litigation activities as an independent contractor to Ford Credit.

Accordingly, Ford Credit respectfully requests that the Court grant its motion to dismiss in its entirety.

## II.  STATEMENT OF FACTS

On June 16, 1997, Plaintiff leased a Ford Explorer from the car dealership, Theodore Robins Ford, who assigned the motor vehicle lease to Ford Credit. Complaint ¶¶ 19, 20 (referencing Orange County Superior Court Case No. 00HL02768), RJN, Ex. A.

On June 13, 2000, Ford Credit's collection counsel, Reese Law Group, filed suit against Plaintiff for the balance owed on the motor vehicle lease, and on March 30, 2001 Reese Law Group obtained a judgment against Plaintiff for that balance in the amount of $11,674.04. Complaint ¶ 20.

In an attempt to collect on the judgment obtained against Plaintiff, Reese Law Group obtained several writs of execution and in turn, requested garnishment of

Plaintiff's wages.[4]  Complaint ¶¶ 23, 25, 33, 37.  In this Action, Plaintiff challenges Reese Law Group's procedural methods in obtaining those writs as well as their calculations of the alleged debt.

### III.  LEGAL STANDARD

A motion under Federal Rules of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted.  *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).  In order to state a claim, a Complaint is required to contain a short and plain statement showing that Plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.  PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE FORD CREDIT IS NOT A 'DEBT COLLECTOR'

Plaintiff's FDCPA claim must fail because Ford Credit is not a "debt collector" as defined by under the FDCPA.  To be held liable for violation of the FDCPA, "a defendant must-as a threshold requirement-fall within the Act's definition of 'debt collector.' " *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1198 (C.D.Cal.2008).  Under the FDCPA, the term "debt collector" means "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who

---

[4] Plaintiff alleges that Reese Law Group issued writs of execution on the alleged debt on July 28, 2003, June 22, 2012, and December 2, 2015.  Complaint ¶¶ 23, 25, 33, 37.

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due another*." 15 U.S.C. § 1692a(6); *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1070 (N.D. Cal. 2015) The definition of "debt collector" specifically excludes any person collecting or attempting to collect its own debt, and excludes automobile finance companies like Ford Credit who are collecting their own obligations.[5] Further, the FDCPA specifically excludes creditors collecting their own consumer debts and the creditor's officers or employees collecting debts on the creditor's behalf.[6]

     Here, it is apparent that Ford Credit is not a "debt collector" as defined under the FDCPA because, as Plaintiff pleads, "Plaintiff…formally owe(s) a debt to Ford Motor Credit Company…(and) Ford Motor Credit Company secured a money judgment against Plaintiff..." Complaint, ¶¶ 19, 20, 22 (*emphasis added*). The allegations of the Complaint concede that Ford Credit was collecting its own debt, and not the debt "of another." Accordingly, Ford Credit is not subject to the federal FDCPA because it is a creditor, and not a "debt collector", as defined by the Act.

---

[5] Indeed, Courts evaluating whether Ford Credit collects its own debt – and is therefore not subject to the federal FDCPA – have found Ford Credit outside the FDCPA's regulation because automobile financing companies making loans or leases to automobile purchasers or lessees are creditors whose principal purpose is not debt collection. *Masudi v. Ford Motor Credit Co.,* 2008 WL 2944643 (E.D.N.Y. 2008) ("Ford Motor Credit Company argues that FDCPA claims must be dismissed because it is a 'creditor' and not a 'debt collector' under the FDCPA. The Court agrees."); *Luna v. Ford Motor Co.,* 2007 WL 4856867 (M.D.Tenn. 2007) ("In particular, automobile financing companies making loans to automobile purchasers have been found not to have the principal purpose of debt collection. *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202, 1206 (D.Minn.1994). Plaintiff has not alleged facts showing that FMCC is a debt collector subject to the FDCPA and its restrictions, rather than a creditor to whom the debt is owed; indeed, he references the FMCC installment contract in his complaint."); *James v. Ford Motor Credit Co.* 47 F.3d 961 (8th Cir.1995) ("Creditors, such as Ford Credit, and repossession companies, such as SACI, are not generally subject to the FDCPA.")

[6] 15 U.S.C. § 1692a(6); *Benson v. Hafif*, 114 F.3d 1193 (9th Cir. 1997); *Barbera v. WMC Mortg. Corp.*, 2006 WL 167632 (N.D. Cal. 2006); *Showalter v. Chase Manhattan/Providian*, 2005 WL 2000943 (N.D.Cal. 2005).

# V. PLAINTIFF'S SECOND CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA'S ROSENTHAL ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. A Vehicle Lease Is Not A "Consumer Credit Transaction" Under The Rosenthal Act.

Debts subject to the Rosenthal Act are "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d). Plaintiff alleges that the debt at issue was a "consumer debt" arising from consumer credit transaction as defined under Civil Code 1788.2(f). Complaint ¶ 63.[7] However, to trigger the Rosenthal Act, an obligation must arise from a "consumer credit transaction." Cal. Civ. Code § 1788.2(e). The analysis under the Rosenthal Act (as to what may be labeled a "consumer credit transaction" for purposes of triggering the Act)

> . . . depends upon the interplay of several definitions found in section 1788.2. "The term 'debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. . ." (§ 1788.2, subd. (c)) "The term 'debt collection' means any act or practice in connection with the collection of consumer debts." (§ 1788.2, subd. (b).) "The terms 'consumer debt' and 'consumer credit' mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (§ 1788.2, subd. (f).) "The term 'consumer credit transaction' means *a transaction* between a natural person and another person *in which property, services* or money *is acquired on credit* by that natural person from such other person primarily for personal, family, or household purposes." (§ 1788.2, subd. (e), *italics added*.)." *Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 759.

---

[7] To the extent the allegation is a mere recitation of the statutory language of the Rosenthal Act, the Court is not required on an F.R.C.P. 12(b)(6) Motion to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1980) *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

After connecting the dots of the above stated inter-related statutes, it is clear that not every consumer obligation will merit governance by the Rosenthal Act; only collection of consumer obligations that arise "by reason of consumer credit transactions" trigger the Act.[8] For example, District Judge Ware held that collection on dishonored checks did not arise "by reason of a consumer credit transaction" and, therefore, such collection was not subject to the Rosenthal Act. *Abels v JBC Legal Group, PC,* 428 F.Supp.2d 1023 (N.D.Cal 2005). California appellate authority similarly recognizes the "consumer credit transaction" limitation on the Rosenthal Act. *Gouskos v. Aptos Village Garage, Inc.,* 94 Cal.App.4th 754, 759 (2001) (automobile repair expenses were not subject to the Rosenthal Act because the Act requires "a transaction where a person acquires property or services on credit").

A motor vehicle lease is not a transaction where property or services is acquired *on credit*. The California Courts of Appeal in *LaChapelle v. Toyota Motor Credit Company,* 102 Cal.App.4th 977, 987 (2002) and *Bescos v. Bank of America, NT & SA,* 105 Cal.App.4th 378, 393 (2003) have twice so recognized and so held, albeit in other contexts that use the same language as the Rosenthal Act.[9]

> For purposes of the [FTC Holder] Rule, a "consumer credit contract" is defined as any instrument which evidences or embodies a debt arising from a 'purchase money loan' transaction or a 'financed sale'. (16 C.F.R. § 433.1, subd. (i) (2002)) A 'Purchase money loan' transaction involves a cash advance received by the customer. (16 C.F.R. § 433.1, subd. (d) (2002).) Appellant did not receive a cash advance.

---

[8] As applicable here, as stated above, section 1788.2(e) defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."

[9] If there exists no decision by the California Supreme Court, district courts must look for guidance to decisions by intermediate appellate state courts on matters of state law. *State Farm Fire & Casualty Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir.1989); *Miller v. Fairchild Indus.,* 797 F.2d 727, 735 (9th Cir.1986).

> 'Financing a sale' refers to '[e]xtending credit to a consumer in connection with a 'Credit Sale' within the meaning of the Truth in Lending Act and Regulation Z". (16 C.F.R. § 433.1, subd. (e) (2002).). Regulation Z defines a 'credit sale' as a sale in which (1) the seller is the creditor, and the consumer agrees to pay an amount substantially equivalent to or in excess of the total value of the property involved, and (2) either will become, or has upon compliance with the agreement for no additional consideration or for nominal consideration. (12 C.F.R. § 226.2, subd. (a)(15) (2002).) Here, although the lease agreement gave appellant the option of becoming the owner of the Toyota at the termination of the lease, she could do so only by paying $15,524.18 -- an amount that cannot be characterized as "nominal." The lease agreement therefore does not meet the definition of a consumer credit contract, and that the FTC Holder Rule, therefore, does not apply to it.

*Bescos* echoed that holding, explaining:

> Furthermore, the lease agreement does not qualify as a "consumer credit contract". 16 C.F.R. § 433.1, 12 C.F.R. § 226.2(a)(16); *La Chapelle v. Toyota Motor Credit Corporation* (2002) 102 Cal.App.4th 977, 126 Cal.Rptr.2d 32.

*Bescos v. Bank of America, N.T. & S.A.,* 105 Cal.App.4th 378, 393 (2003).

Here, Plaintiff's motor vehicle lease is no different than the motor vehicle leases at issue in *La Chapelle* and *Bescos* and, thus, does not arise out of a "consumer credit transaction" triggering the Rosenthal Act. Nor does Plaintiff plead that Plaintiff's lease involves the purchase of consumer goods "on credit". Accordingly, the Rosenthal Act does not apply to Plaintiff's motor vehicle lease and the Second Cause of Action against Ford Credit must be dismissed without leave to amend.

**B.  The Rosenthal Act Does Not Impute the "Litigation Activity" of Ford Credit's Attorneys to Ford Credit.**

Even if the Rosenthal Act reaches a "consumer lease", nothing in the Act alters California's traditional rule that litigation attorneys are "independent

contractors" with regard to litigation conduct and their litigation conduct cannot be imputed to their clients.

Plaintiff's Complaint does not make any individual allegations against Ford Credit, rather Plaintiff attempts to impute the alleged misconduct of Ford Credit's litigation counsel to Ford Credit.   California law is well settled that a client cannot be held liable for the tortious litigation conduct of its attorneys. *Palmer v. Ted Stevens Honda, Inc.*, 193 Cal.App.3d 530, 539 (1987); *Lynn v. Superior Court,* 180 Cal.App.3d 346, 349 (1986)("An attorney may act as an employee for his employer in carrying out non-legal functions [*citation omitted*]; he may be the agent of his employer for business transactions [*citation omitted*], or for imputed knowledge [*citation omitted*]; *but in his role as trial counsel, he is an independent contractor* [*citations omitted*].")  This includes Reese Law Group's actions in obtaining a judgment against Plaintiff, as well as levying on that judgment.

The Court in *Palmer v. Ted Stevens Honda, Inc.,* 193 Cal.App.3d 530, 539 (1987) clarified and states the applicable rule of law as follows:

> While much of what an attorney does in litigation is contractually binding on the client, where it is tortious the client is not vicariously liable merely for retaining the attorney who is an independent contractor.  The client is insulated from tort liability for the attorney's litigation conduct on his behalf where "[t]here is no showing … of ratification or any other act by [the client] endorsing or approving the attorney's actions."

*Accord*: *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates,* 94 Cal.App.4th 890, 921-922 (2001); *Lynn v. Superior Court,* 180 Cal.App.3d 346, 349 (1986) ("in his role as trial counsel, [an attorney] is an independent contractor").  Rather, the Rosenthal Act only alters California's traditional rule where the attorneys act in a non-legal capacity. *Oei v. N. Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1096 n. 28 (C.D.Cal.2006)  ("(A)s respects plaintiffs' Rosenthal Act claim, a California claim to which *Lynn* applies, the decision…insulates (the client)…from vicarious liability for (the)…filing and

prosecution of the state court collection action. It does not protect (the client)… from liability for such "nonlegal" conduct as making repeated harassing telephone calls"). And, even in those circumstances, a Rosenthal Act plaintiff must still plead facts supporting agency – authority, control, ratification, etc.

Plaintiff here pleads no facts alleging that Ford Credit had any involvement in (or control over) the litigation conduct of its trial counsel, Reese Law Group, as to obtaining a judgment against Plaintiff and/or the steps taken to levy on that judgment. *See Palmer,* 193 Cal.App.3d at 539; *Lynn,* 180 Cal.App.3d at 349 ("In our view independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, *responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance*"); *see also Naff v. State Farm Gen. Ins. Co.,* No. 1:15-CV-00515-JLT, 2016 WL 4095948, at *6 (E.D. Cal. Aug. 2, 2016) ("the Ninth Circuit has relied upon *Palmer* to hold that activities during litigation by the insurer's attorneys are not evidence of bad faith by the insurer. *Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989)"). Nor does Plaintiff allege "nonlegal" misconduct under the Rosenthal Act. See *Oei*, 486 F.Supp.2d at 1096 n. 28; Complaint, ¶¶19 – 47.

Accordingly, since Plaintiff alleges that Ford Credit's attorneys acted in a litigation capacity only, such attorneys acted as independent contractors and their conduct cannot be imputed to Ford Credit.

## VI.  CONCLUSION

For the reasons set forth above, Ford Credit respectfully requests that the Court dismiss Plaintiff's Complaint as to Ford Credit without leave to amend.

DATED: December 13, 2016          SEVERSON & WERSON
                                  A Professional Corporation


                                  By:    */s/ Ryan M. Ito*
                                         Scott J. Hyman
                                         Ryan M. Ito


                                  Attorneys for Defendant FORD MOTOR
                                  CREDIT COMPANY LLC (erroneously sued as
                                  Ford Motor and Credit Company)

**CERTIFICATE OF SERVICE**
*Muhammad v. Reese Law Group, APC, et al.*
**USDC Southern District Case No. 3:16-cv-02513-MMA-BGS**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On December 13, 2016, I served true copies of the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 13, 2016, at Irvine, California.

_____
Carla Durkee

**SERVICE LIST**
*Muhammad v. Reese Law Group, APC, et al.*
**USDC Southern District Case No. 3:16-cv-02513-MMA-BGS**

| | |
|---|---|
| William R. Jarrell, Esq.<br>Andre L. Verdun, Esq.<br>CROWLEY LAW GROUP<br>600 B Street, Suite 2050<br>San Diego, CA  92101 | Attorneys for Plaintiff<br>SABRINA MUHAMMAD<br><br>Telephone:  (619) 238-5700<br>Facsimile:   (866) 786-6993<br>willjarrell@crowleylawgroup.com<br>andreverdun@gmail.com |
| Joseph M Pleasant<br>REESE LAW GROUP<br>6725 Mesa Ridge Road, Suite 240<br>San Diego, CA 92121 | Attorneys for Defendant<br>Reese Law Group, APC<br><br>Telephone:  (858) 550-0389<br>Facsimile:   (858) 550-0941<br>Email: jpleasant@reeselawgroup.com |