# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA MUHAMMAD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>REESE LAW GROUP, APC; and FORD MOTOR AND CREDIT COMPANY,<br><br>Defendants. | Case No.: 16cv2513-MMA (BGS)<br><br>**ORDER GRANTING DEFENDANT FORD MOTOR CREDIT COMPANY'S MOTION TO DISMISS**<br><br>[Doc. No. 15] |

Plaintiff Sabrina Muhammad ("Plaintiff") brings two causes of action against Defendant Reese Law Group ("Reese") and Defendant Ford Motor Credit Company, LLC[1] ("Ford," collectively "Defendants"). Plaintiff alleges Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.* ("Rosenthal Act"). *See* Complaint. On January 23, 2017, the Court granted Reese's anti-

---

[1] Ford Motor Credit Company, LLC was erroneously sued as Ford Motor and Credit Company. *See* Doc. No. 10 at 2.

SLAPP motion, dismissing Plaintiff's Rosenthal Act claims against Reese with prejudice. Doc. No. 31. Ford now moves to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 15. Plaintiff filed an opposition to Ford's motion, to which Ford replied. *See* Doc. Nos. 30, 34. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 36. For the reasons set forth below, the Court **GRANTS** Ford's motion to dismiss.

## BACKGROUND[2]

Plaintiff Sabrina Muhammad is an individual residing in Orange County, California. Reese is a law firm headquartered in San Diego, California, which conducts business in the state of California. Ford is headquartered in Dearborn, Michigan, and employs the services of Reese to collect alleged debts on its behalf.

On June 16, 1997, Plaintiff leased a Ford Explorer from the Theodore Robins Ford car dealership. The car dealership assigned the motor vehicle lease to Ford Credit. Plaintiff defaulted on the debt. In June 2000, Ford's collection counsel, Reese, "filed suit against Plaintiff for the balance owed on the motor vehicle lease." Doc. No. 15-1 at 3. On or about March 30, 2001, Ford secured a money judgment against Plaintiff in the Orange County Superior Court in the amount of $11,674.04. Defendants did not attempt to collect any money for approximately two years. On or about July 28, 2003, Defendants obtained a Writ of Execution directing the Orange County Sheriff's Office to collect $14,346.64 from Plaintiff.

On or about September 30, 2003, the Orange County Sheriff's Office commenced garnishing Plaintiff's wages pursuant to an Earnings Withholding Order. On or about July 17, 2009, Defendants applied for a renewal of the money judgment entered against

---

[2] Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). All facts are taken from the Complaint (Doc. No. 1) unless otherwise noted.

Plaintiff. In its application, Defendants alleged Plaintiff owed $12,462.20. Defendants filed a "Memorandum of Costs After Judgment, Acknowledgment of Credit, and Declaration of Accrued Interest" with the Orange County Superior Court attesting to Plaintiff owing $768.16 in accrued interest. Complaint ¶ 27.

On or about November 8, 2010, Plaintiff took a leave of absence from her employment with the Internal Revenue Service due to a medical condition. Plaintiff remained on non-pay status for approximately one year. On or about November 24, 2010, Defendants ceased garnishing Plaintiff's wages in Orange County. At this time, Plaintiff allegedly owed $3,284.00 on the money judgment.

On or about June 3, 2011, the Orange County Sheriff's Office returned an "Execution Return – Earnings Withholding Order" to Reese, and the Orange County Superior Court, deeming the money judgment against Plaintiff to be "partially satisfied." Complaint ¶ 31. This document certified that the Sheriff's Office collected a total of $13,015.24 from Plaintiff. Of that amount, $11,126.24 was allocated to the money judgment, and $1,889.00 was paid to the Sheriff's Office for fees and expenses incurred.

On or about November 9, 2011, Reese filed a "Memorandum of Costs After Judgment, Acknowledgement of Credit, and Declaration of Accrued Interest" with the Orange County Superior Court attesting to Plaintiff owing $1,070.48 of accrued interest, despite the fact that the money judgment had been deemed "partially satisfied." Complaint ¶ 32. On or about June 22, 2012, Reese obtained a Writ of Execution directing the Orange County Sheriff to collect $13,007.82 from Plaintiff.

On or about November 30, 2015, more than five years after Defendants ceased garnishing Plaintiff's wages, Reese filed an additional "Memorandum of Costs After Judgment, Acknowledgement of Credit, and Declaration of Accrued Interest" in the Orange County Superior Court, claiming Plaintiff owes $5,887.64 of accrued interest.

On or about December 2, 2015, Reese obtained a Writ of Execution in San Diego County, directing the San Diego County Sheriff to collect a total of $17,024.98 from Plaintiff. Plaintiff has never resided or worked in San Diego County. The original

contract between Plaintiff and Ford was executed in Orange County. On or about January 6, 2016, the San Diego County Sheriff's Office issued an Earnings Withholding Order to Plaintiff's employer, stating Plaintiff owed $17,986.09 pursuant to the money judgment originally obtained against Plaintiff on or about March 30, 2001. On or about January 27, 2016, Plaintiff drove from Orange County to San Diego to file a "Claim for Exemption," contesting the amount Defendants sought to garnish from her wages. In February 2016, the San Diego County Sheriff's Office began garnishing Plaintiff's wages.

Plaintiff asserts that despite having no ties to San Diego County, Defendants "continue to garnish Plaintiff's wages pursuant to the Earnings Withholding Order filed with the San Diego County Sheriff's Office on or about January 6, 2016." Complaint ¶ 45. Plaintiff alleges she has taken time off of work to travel to San Diego County to "prevent Defendants from continuing to illegally garnish her wages." Complaint ¶ 46. As a result, Plaintiff asserts she "has suffered emotional distress with manifestations including, but not limited to, loss of appetite, inability to sleep, marital discord, anxiety, and paranoia." Complaint ¶ 47. On October 7, 2016, Plaintiff filed the instant action against Defendants alleging violations of the FDCPA and Rosenthal Act.

## LEGAL STANDARDS

### A. Request for Judicial Notice

Generally, a court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)). While a court may take judicial notice of matters of public record, it

may not take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**B.     12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations

which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### A. Ford's Request for Judicial Notice

As an initial matter, Ford requests the Court take judicial notice of two documents in connection with its motion to dismiss. *See* Doc. Nos. 16-1, 35-1. The first document is a copy of the executed Motor Vehicle Lease Agreement entered into between Plaintiff and Ford on June 19, 1997. Doc. No. 16-1. The second document is a copy of this Court's Order granting Defendant Reese Law Group's anti-SLAPP motion. Doc. No. 35-1. Plaintiff did not file an opposition to Defendant's request for judicial notice.

The Court finds the authenticity of the parties' Motor Vehicle Lease Agreement is not subject to reasonable dispute, and **GRANTS** Ford's request for judicial notice of this document. Additionally, the Court **DENIES AS MOOT** Ford's request for judicial notice of this Court's Order granting Reese's anti-SLAPP motion, as the Court need not take judicial notice of previous Orders issued by the Court in this action.

### B. Ford's Motion to Dismiss

While Plaintiff refers to Reese and Ford as "Defendants" without specifying the individual acts of each party in her Complaint, Plaintiff also alleges that Ford "employed the services of REESE LAW GROUP to collect an alleged debt from Plaintiff." Complaint ¶ 13. Plaintiff's Complaint clarifies that the terms "'Defendant' and 'Defendants' refer to all defendants, named and unnamed, as Plaintiff alleges each to be jointly and severally liable for the conduct alleged herein." Complaint ¶ 14. In her opposition, Plaintiff states, "Defendant Ford Motor Credit hired Reese Law Group to collect the debt, making Defendant Ford Motor Credit responsible for all the actions of their attorneys." Doc. No. 30 at 1. Moreover, Plaintiff asserts Ford is "vicarious[ly] liable for [Reese's] actions." *Id.* at 3. As such, the Court construes Plaintiff's Complaint,

together with her opposition to Ford's motion to dismiss, as alleging that Ford is liable under the FDCPA and Rosenthal Act based on a theory of vicarious liability.

### 1. FDCPA

"Congress enacted the FDCPA in 1968 in response to 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors [which] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1024 (9th Cir. 2012) (citing 15 U.S.C. § 1692(a)).

Plaintiff alleges various violations of the FDCPA. Specifically, Plaintiff claims Defendants engaged "in conduct the natural consequence of which is to harass[,] oppress, or abuse Plaintiff" in violation of Section 1692d; used "false, deceptive, or misleading representations or means in connection with collection of an alleged debt from Plaintiff" in violation of Section 1692e; used "false representations and deceptive practices" in collecting the alleged debt in violation of Section 1692e(10); used "unfair or unconscionable means against Plaintiff in connection with an attempt to collect a debt" in violation of Section 1692f; and brought a legal action against Plaintiff in an improper venue in violation of Section 1692i(a)(2). Complaint ¶ 52(a)-(e).

Ford contends that Plaintiff fails to state a claim under the FDCPA because as a threshold issue, Ford is not a "debt collector" as defined by the statute. *See* Doc. No. 15-1 at 4. In opposition, Plaintiff does not address Ford's argument that it is not a debt collector. Instead, Plaintiff claims Ford is vicariously liable for employing Reese to collect a debt on its behalf. *See* Doc. No. 30 at 2-3.

"To be held liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of 'debt collector.'" *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008). The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or *due another*." 15 U.S.C § 1692a(6) (emphasis added). The Ninth Circuit has held that debt collectors can be vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf. *See Fox v. Citicorp*, 15 F.3d 1507, 1516 (9th Cir. 1994). "General principles of agency form the basis of vicarious liability under the FDCPA." *Breidenbach v. Experian*, 2013 WL 1010565, at *3 (S.D. Cal. Mar. 13, 2013). In order to be liable for the actions of another, "the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006). However, various circuit courts have held that "because the FDCPA only imposes liability on debt collectors, vicarious liability may only be imposed if *both the principal and the agent* are debt collector[s] as defined by the FDCPA." *Breidenbach*, 2013 WL 1010565, at *3 (emphasis added); *see Police v. Nat'l Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) (concluding that a company may be held vicariously liable for acts of its agent because the company and agent were debt collectors); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (declining to impose vicarious liability on non-debt collectors); *Fox*, 15 F.3d at 1513 (imposing vicarious liability on company for acts of its attorney where company was also a debt collector); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006) (stating "[v]icarious liability under the [FDCPA] has similarly been restricted to principals who themselves are statutory 'debt collectors.'"); *but see Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1090 (E.D. Cal. 2013) (rejecting *Oei* and *Police* and holding that non-debt collector creditors can be vicariously liable for their attorneys' actions under the FDCPA).

Here, the Court is persuaded by the weight of authority restricting FDCPA liability to entities that fit the statutory definition of "debt collector" as set forth in § 1692a(6). Plaintiff does not allege that Ford is itself a debt collector as defined by the statute. Rather, Plaintiff concedes that she is alleged to "formally owe a debt to Ford Motor Credit Company." Complaint ¶ 19. Further, Plaintiff claims "Ford Motor Credit Company secured a money judgment against Plaintiff." Complaint ¶ 20. Thus, Plaintiff

acknowledges Ford took action to collect its own debt—not the debt "of another" as required by 15 U.S.C. § 1692a(6). As such, Plaintiff fails to state a FDCPA claim against Ford on a theory of vicarious liability. Accordingly, because Plaintiff cannot allege that Ford is a "debt collector" as defined under the FDCPA, the Court **GRANTS** Ford's motion to dismiss Plaintiff's FDCPA claims against Ford **with prejudice**.[3]

### 2. Rosenthal Act

Plaintiff further alleges Defendants violated Sections 1788.15(a) and 1788.15(b) of the Rosenthal Act. Complaint ¶ 64(a)-(b). Section 1788.15(a) provides in full, "[n]o debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected." Cal. Civ. Code § 1788.15(a). Section 1788.15(b) provides:

> No debt collector shall collect or attempt to collect a consumer debt, *other than one reduced to judgment*, by means of judicial proceedings in a county other than the county in which the debtor has incurred the consumer debt or the county in which the debtor resides at the time such proceedings are instituted, or resided at the time the debt was incurred.

Cal. Civ. Code § 1788.15(b) (emphasis added).

In its motion to dismiss, filed December 13, 2016, Ford asserts Plaintiff cannot state a claim under the Rosenthal Act because (a) a vehicle lease is not a "consumer credit transaction" as defined under the Rosenthal Act; and (b) the Rosenthal Act does not impute the "litigation activity" of Ford's attorneys to Ford Motor Credit Company. *See* Doc. No. 15-1 at 6-8. Plaintiff filed her opposition to the motion to dismiss on

---

[3] As such, the Court similarly **DISMISSES** Plaintiff's claims under Section 1788.17 of the Rosenthal Act, which incorporates various provisions of the FDCPA, against Ford **with prejudice**. "The Rosenthal Act requires compliance with the FDCPA and a debt collector that violates the FDCPA also violates the Rosenthal Act." *Gold*, 82 F. Supp. 3d at 1078; *see also* Cal. Civ. Code § 1788.17. Because Plaintiff cannot allege that Ford is liable under the FDCPA, Plaintiff similarly cannot allege Ford is liable under Section 1788.17. Thus, the Court proceeds by analyzing Plaintiff's additional theories of liability under the Rosenthal Act.

January 22, 2017. Doc. No. 30. The following day, the Court issued its Order granting Reese's anti-SLAPP motion. Doc. No. 31. Ford filed its reply brief on January 30, 2017, arguing that because the Court dismissed Plaintiff's Rosenthal Act claims against Reese with prejudice, Ford cannot be held vicariously liable for claims that no longer exist.[4] *See* Doc. No. 34 at 3.

Here, the Court agrees that because Plaintiff does not allege any basis of liability against Ford that is separate and apart from that of Reese, Plaintiff's Rosenthal Act claims against Ford fail for the same reason they fail against Reese. *See* Doc. No. 31 at 9 ("Plaintiff does not allege any facts to support [her 1788.15(a)] allegation. Such a conclusory statement, without more, is insufficient to establish a reasonable probability of prevailing on her Section 1788.15(a) claim."); Doc. No. 31 at 9 ("Because Ford secured a money judgment, Section 1788.15(b) does not apply to the case at bar. Thus, Plaintiff fails to establish a probability of prevailing on her claim under section 1788.15(b)."). Accordingly, the Court **GRANTS** Ford's motion to dismiss Plaintiff's remaining Rosenthal Act claims against Ford **with prejudice**.[5]

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[4] While a party ordinarily may not submit new evidence in a reply brief, the Court's Order granting Reese's anti-SLAPP motion cannot be considered "new evidence." The Court's Order, issued after Ford filed the instant motion, altered the landscape of this litigation. Accordingly, the Court must address Ford's liability, if any, in light of the Order dismissing Plaintiff's Rosenthal Act claims against Reese with prejudice.

[5] Because the Court grants Ford's motion to dismiss on this ground, the Court need not consider Ford's additional arguments in support of its motion to dismiss.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Ford's motion to dismiss Plaintiff's Complaint and **DISMISSES** Plaintiff's FDCPA and Rosenthal Act claims against Ford **with prejudice**.[6] The Clerk of Court is instructed to terminate Ford from this action.

**IT IS SO ORDERED.**

Dated: April 27, 2017

HON. MICHAEL M. ANELLO
United States District Judge

---

[6] Dismissal is with prejudice because any amendment to cure the deficiencies addressed herein would be futile. *See AE v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (noting that "a district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").